UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| CINDY KIRTLEY, et al.,            )<br>                                                )<br>   Plaintiffs,            )<br>                                                )<br>V.                                             )<br>                                                )<br>CITY OF WALTON, et al.,       )<br>                                                )<br>   Defendants.           )  | Civil Action No. 2: 24-112-DCR<br><br>**MEMORANDUM ORDER<br>AND OPINION** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs Cindy Kirtley ("Kirtley"), Tiechia Miles ("Miles") and TNM Cleaning Services, LLC ("TNM") filed this action on June 27, 2024, asserting claims against the City of Walton, Mayor Gabriel Brown in his individual and official capacity, Gevana Heeger-Hicks, and Does 1-50. [Record No. 1] The individual plaintiffs allege that the defendants discriminated against them in the decision to terminate their employment with the City and that the defendants were otherwise negligent during the plaintiff's employment. Defendant Gabriel Brown has moved for judgment on the pleadings regarding the claims asserted against him. [Record No. 24] The plaintiffs requested leave to amend their Complaint to add address its deficiencies in their response. However, they did not tender a proposed amended complaint. [Record No. 31] Thereafer, the plaintiffs filed a separate motion to file an amended complaint to add an additional plaintiff, but once again they did not submit a proposed amended complaint. [Record No. 35]

I.

Kirtley and Miles are cousins. Both are African American and were employed by the City of Walton. [Record No. 1] Miles owns TNM and contracted with the City of Walton in 2018. Kirtley was hired as an Assistant City Clerk on September 21, 2021. Kirtley claims that, beginning in August 2022, she "discovered inaccuracies in deposits, discrepancies in timecards, and impropriety in the distribution of city-owned equipment by her supervisor, City Clerk Gevana Heeger Hicks." [*Id.*] Upon discovering these purported inaccuracies, she notified Mayor Brown. Kirtley contends that, following this notice, her access to City records was restricted. And later, she was later locked out of the timekeeping application.

In addition to these incidents, Kirtley claims that she began to face retaliatory conduct, beginning with a hostile work environment and later with an "inaccurate" letter (dated November 7, 2022) stating that she was underperforming. After receiving the letter, Kirtley alleges that her job duties were reassigned to a white colleague. Further, she continued to receive unfair performance evaluations and faced hostile work environment. Kirtley was terminated in July 2023 which, she claims, was in retaliation for her allegations against Hicks. Kirtley was then replaced by a white employee.

Miles alleges that as the events involving Kirtley occurred, TNM began to receive complaints from Hicks about its cleaning services. Following a series of complaints, the City terminated its contract with TNM on October 10, 2023. The plaintiffs allege that this was done without following proper City protocols. Additionally, the City did not formally submit a request for proposal for new bids but instead awarded the cleaning contract to "Someone Else Solutions," a "white-owned company."

## II.

"After the pleadings are closed ... a party may move for judgment on the pleadings." Fed. R Civ. P. 12(c). *Elkins v. Extreme Products Group, LLC*, 2022 WL 409694 at *1 (E.D. Ky. February 9, 2022). "The primary distinction between a motion to dismiss for failure to state a claim [under Rule 12(b)(6)] and a motion for judgment on the pleadings [under Rule 12(c)] is one of timing." *Prudential Insurance Co. of America v. McFadden*, 504 F.Supp.3d 627, 632 (E.D. Ky. 2020).

The Court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). Thus, the Court examines whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Twombly*, 550 U.S. at 556). The Court looks to the substance of the entire complaint to determine if the claims are properly asserted and must be "construed so as to do justice." Fed. R. Civ. P. 8(e).

While a complaint need not contain detailed factual allegations, a plaintiff must provide more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And although plaintiffs are not required to plead facts showing that a defendant is likely to be responsible for the harm alleged, plaintiffs must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*,

556 U.S. at 678. The plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (*citing Twombly*, 550 U.S. at 555).

When reviewing a motion under Fed. R. Civ. P. 12(b)(6), the court "accept[s] all of the plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). However, the Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III.

### A.

Brown has moved the Court to dismiss all claims asserted against him in his official capacity, arguing that such claims are duplicative of the plaintiffs' claims against the City. "Where a plaintiff names a government official in a suit for retroactive relief, any recovery from the defendant in his or her official capacity would stem from the government, not the individual. Thus, 'official-capacity claims are deemed to be against the [government].'" *Clark v. Kentucky*, 229 F. Supp. 2d 718, 721–22 (E.D. Ky. 2002) *citing Doe v. Wigginton*, 21 F.3d 733, 736–37 (6th Cir. 1994); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) ([t]here is no longer a need to bring official-capacity actions against local government officials... local government units can be sued directly for damages and injunctive or declaratory relief).

Although the Sixth Circuit has held that "dismissal of official capacity claims is not mandatory merely because they may overlap with claims against a municipality," *Ritchie v. Coldwater Community Schools*, 947 F. Supp. 2d 791, 817 (W.D. Mich. 2013), it has generally

limited official capacity suits to actions for "prospective relief." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 416-17 n.11 (6th Cir. 2019). Similarly, under Kentucky law, "official capacity claims are also treated as claims against the agent's entity." *Sharp v. Bowling Green, Kentucky Police Department*, 2024 WL 5056638, at *6 (W.D. Ky. Dec. 10, 2024) *quoting Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001).

The plaintiffs contend that their claims against Brown are not legally indistinguishable from those asserted against the City. They argue that it is important for Brown to remain part of the litigation because of his "purposeful conduct involving the misuse and fraudulent spending of taxpayer dollars." [Record No. 31 at p.6] And they further argue that these fraud allegations are central to their claims and dismissing Brown would hinder their ability to hold him accountable for his "direct role in the alleged misconduct." [Record No. 31 at p. 6] However, notwithstanding the centrality of these issues to the plaintiff's claims, any liability ultimately established would not be against him but the City. Further, the relief sought by plaintiffs is retrospective as there is no prospective relief available. The official capacity claim falls outside the scope of what is permissible. Therefore, the official capacity claims asserted against Brown will be dismissed.

**B.**

The Kentucky Whistleblower Act ("KWA") is "an antiretaliation statute that applies to employees of the Commonwealth of Kentucky and its political subdivisions.*" Simmons v. Kentucky Public Protection* Cabinet, 2025 WL 223613 (Ky. Ct. App. 2025); N. *Ky. Area Dev. Dist. v. Wilson*, 612 S.W.3d 916, 919 (Ky. 2020). To succeed on a claim under this statue, the plaintiff "must prove that the employer is a 'political subdivision' of the Commonwealth of Kentucky." *Id*. at 920. But cities do not qualify as political subdivisions

under the KWA. *See Wilson v. City of Central City*, 372 S.W. 3d 863, 870 (Ky. 2012). Further, "KRS 61.101(2) does not impose individual civil liability under Kentucky's Whistleblower Act for reprisal against public employees of the Commonwealth and its political subdivisions." *See Cabinet for Fams. & Child. v. Cummings*, 163 S.W.3d 425, 434 (Ky. 2005).

Kirtley does not contest that Brown cannot be held liable under the KWA and the Court will dismiss Kirtley's claims asserted against him in his individual capacity under Count I.

### C.

Brown also has moved for judgment under Counts II and III regarding Kirtley's claims under KRS Chapter 344 and Title VII. The Kentucky Civil Rights Act ("KCRA") contains language like the federal civil rights statutes. And because KRS Chapter 344 is intended to embody the federal civil rights statutes, both Kentucky courts and the Sixth Circuit look to federal law to interpret the state statute. *See Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705-06 (Ky. Ct. App. 2004); *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649-650 (6th Cir. 2001).

Plaintiffs seeking to recover under Title VII must bring claims against their "employer." 42 U.S.C. § 2000e-3(a). Further, an individual who does not qualify as an employer cannot be held liable under Title VII. *Id. See also Dale v. City of Paris*, Civil Action No. 5: 20-324-DCR, 2020 WL 7634162, at *4 (E.D. Ky. Dec. 22, 2020) (finding Title VII imposes liability only upon employers). Under Kentucky law, an employer is 'a person who has eight (8) or more employees ... and an agent of such a person.' KRS § 344.030. Liability can extend to agents of an employer, but the Sixth Circuit has held that an "agent" under Title VII is intended to include respondeat superior liability, as opposed to individual liability. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405-06 (6th Cir. 1997). Thus, only employers may be held liable.

- 6 -

*Dale*, 2020 WL 7634162, at *4.  Similarly, Kentucky courts have held that "individual agents or supervisors who do not otherwise qualify as employers cannot be held personally liable in their individual capacities under KRS Chapter 344." *Conner v. Patton*, 133 S.W.3d 491, 493 (Ky. Ct. App. 2004).

Kirtley also asserts claims against Brown in his individual capacity under § 2000e and KRS Chapter 344.  Kirtley was employed by the City of Walton, a named defendant.  However, under Title VII and the KCRA, Brown does not qualify as an employer.  Although Brown was acting on behalf of the City when he terminated Kirtley, his actions do not create individual liability under either statute.

Kirtley attempts to distinguish the facts of this case from authority cited by Brown. Most notably, she argues that under *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000), individuals may be "held personally liable if their actions substantially contributed to the violation." [Record No. 31 at p. 9] However, such liability is limited to claims for retaliation under KRS 344.280, which forbids retaliation by a "person."  While an accurate statement of law, Kirtley has brought claims under KRS 344.050, not 344.280 and, as such, individual liability does not extend to Brown.  Kirtley's further contentions that discovery is not complete, and plaintiffs should be allowed to explore facts is irrelevant as Brown cannot be held liable under the statute.

### D.

While Kirtley concedes that she cannot proceed against Brown under the KWA, she has moved for leave to amend the complaint to include alternative theories of liability against Brown.  Kirtley did not file a separate motion for leave to amend the complaint.  She instead sought permission in the body of her Response Memorandum in Opposition to the Defendant's

Motion for Partial Judgment on the Pleadings. [Record No. 31] Although Rule 15 of the Federal Rules of Civil Procedure holds that courts "should freely give leave [to amend] when justice so requires," the right to amend is not automatic. " *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008) The Sixth Circuit has held that plaintiffs cannot amend their complaint without filing a motion seeking leave to amend. *See also Durante v. Fairlane Town Ctr.,* 201 Fed.Appx. 338, 344 (6th Cir. 2006) (holding that despite "liberal policy with respect to amendments of defective pleadings" provided by Rule 15, plaintiff was not entitled to amend complaint to correct defects where no motion seeking to amend was filed).

Kirtley also failed to attach a copy of the proposed amended complaint. Seeking leave to amend under such circumstances unfairly prejudices the defendants and denies the Court the ability to evaluate the validity of Kirtley's potentially new claims. As such, the Court will deny Kirtley's imbedded request to amend the complaint to assert new claims against Brown.

**E.**

Separately, the plaintiffs have moved for leave to amend their Complaint to add Katie O'Riley Batton as an additional plaintiff. According to Kirtley and Miles, Batton also was allegedly terminated from her employment with the City of Walton. [Record No. 35] In support, the plaintiffs contend that Batton has information directly related to the case and was already expected to testify about the defendants' employment practices and other facts relevant to their claims.

Rule 15(a)(2) of the Federal Rules of Civil Procedures states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The rule further holds that courts "should freely give leave [to amend] when justice so requires." This standard is generally liberal, to ensure that cases are decided on their merits

rather than on procedural technicalities. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is within the Court's discretion to grant or deny a plaintiff the opportunity to amend their complaint. *Id.* In evaluating a potential amendment, the Court weighs various factors such as the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Century Indemnity Co. v. Begley Co.*, 323 F.R.D. 237, 242 (E.D. Ky. 2018). Additionally, "[a] party requesting permission to file an amended complaint must attach a copy of the proposed amended complaint to his motion so that the Court can properly evaluate whether to permit it." *Bailey v. Aramark Corp.*, 2017 WL 3841687, at *5 (E.D. Ky. Sept. 1, 2017) (*citing Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014)).

The court will deny the plaintiff's motion for leave to amend because it is procedurally defective, given that the motion for leave to amend the complaint is untimely and the plaintiffs filed their motion without including a copy of the proposed amended complaint. The Court entered a Scheduling Order on October 29, 2024, which required the parties to file all motions to amend the pleadings and/or to join additional parties by January 15, 2025. [Record No. 21] The plaintiffs did not file their motion for leave until February 24, 2025, some 40 days after the deadline. At this point in the litigation, the parties are well underway with discovery, and allowing plaintiffs the ability to amend the complaint would necessitate substantial additional discovery that could not be completed by the discovery deadline of July 21, 2025. Given that the plaintiffs were aware of the proposed additional claims and Batton's potential involvement, this delay is not excusable.

Moreover, the plaintiffs did not include a copy of the Proposed Amended Complaint. Without a copy of a Proposed Amended Complaint, the Court has no information about the nature of her employment or the alleged wrongful basis for her termination. As such, the Court cannot determine whether granting the plaintiffs leave to amend would be futile.

The plaintiffs have failed to demonstrate good cause for leave to amend. Although defendants have been aware of Batton's involvement since the initial disclosures, a party's involvement as a potential fact witness is very different than a party pursuing their own legal claims.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.  Defendant Brown's motion for partial judgment on the pleadings [Records No. 24] is **GRANTED**.

2.  The plaintiffs' claims against Defendant Brown in his official capacity as the Mayor of the City of Walton under Counts I, II, III, IV, V, VI and VII are **DISMISSED** with prejudice.

3.  Plaintiff Kirtley's claims against Defendant Brown in his individual capacity under Counts I, II and III are **DISMISSED** with prejudice.

4.  The plaintiffs' motion for leave to amend the complaint [Record No. 35] is **DENIED**.

Dated: June 23, 2025.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky